**Maurice H. NELSON, Plaintiff, Appellant,**

**v.**

**Henry RICHIA et al., Defendants, Appellees.**

**No. 5073.**

United States Court of Appeals
First Circuit.

May 4, 1956.

J. C. Johnston, Boston, Mass., with whom Melvin J. Levine, Boston, Mass., was on brief, for appellant.

Leonard Poretsky, Boston, Mass., for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment entered September 28, 1955, in the United States District Court for the District of Massachusetts dismissing the plaintiff's amended complaint with costs.

At the termination of plaintiff's evidence the trial judge ruled that there was a failure to show the agreements relied upon in Paragraphs 6,[1] 7 and 8 of the complaint, for which specific performance had been sought.

The plaintiff's evidence was to the following effect. The plaintiff, Maurice H.

---

1. "6. On or about the twenty-sixth day of October, A.D.1953, in consideration that the plaintiff would approve of the assignment to the defendant, Henry Richia, or to his nominee, of all the right, title and interest of Vi-Dan, Inc. in a certain license contract entitling the said Vi-Dan, Inc. to purchase certain machinery and equipment and to operate the same, a copy of which is annexed to the original Complaint marked Exhibit 'B' and which is adopted by reference, by the terms of which license contract the approval of the plaintiff was required to any assignment thereof, the defendant, Henry Richia, for himself and his nomi-

Nelson, on April 30, 1952, licensed one Palmerino to operate a store in Wakefield, Massachusetts, dealing in frozen milk products, under the trade name "Dairy Queen." On May 5, 1952, the plaintiff licensed Palmerino to conduct a similar business in Woburn. On May 19, 1952, both license agreements were assigned by Palmerino to Vi-Dan, Inc., a Massachusetts corporation in which Palmerino had an interest. In October 1953, Palmerino, acting for Vi-Dan, began negotiations with the defendant, Henry Richia, and his representative, for the sale of both stores. During these negotiations Richia or his agent were several times clearly apprised by Palmerino and plaintiff's counsel that the sale of the physical assets of the businesses and the assignments of the license agreements were both contingent upon securing the written assent of the plaintiff. Richia was further informed by plaintiff's counsel that consent to the sale of assets would be given only upon the condition that Richia would agree to be bound by novation, in the event that he elected to take assignments, or, at his option, he might execute direct license agreements with the plaintiff. Copies of the Vi-Dan licenses and of proposed direct licensing agreements were given to Richia for his consideration. At various times during the negotiations for the sale of the stores, Richia and his counsel indicated that there had not been a decision as to which of these alternative agreements would be accepted, but that one or the other would be executed prior to the transfer of the physical assets of the business from Vi-Dan.

On November 6, 1953, plaintiff's attorney met with Richia's attorney to pass title but Richia was not present. He was reported to be out of town, but his attorney explained that everything had been left in his hands to complete the transaction. Plaintiff's attorney protested that there could be no consummation of the sale from Vi-Dan to Richia unless one or the other of these alternative agreements was executed by Richia. Richia's attorney gave assurances that his client would be back in several days and would execute one agreement or the other. The sale of the physical assets was thereupon effected.

Subsequently plaintiff's attorney called Richia's attorney about half a dozen times concerning the execution of the franchises but without success. Plaintiff's attorney then contacted Richia at the Wakefield store and was told that Richia had no authority to do anything but must first get instructions from Florida. After approximately four months had elapsed from the date of passage of title, Richia at last frankly asserted that he would not execute either agreement.

Plaintiff contends, of course, that the trial judge erred in dismissing the complaint and entering judgment for the defendants based upon his finding that there was no oral contract capable of supporting a decree of specific performance. At the conclusion of plaintiff's evidence the court made this statement to counsel:

"I do not need to hear any further testimony. I am perfectly prepared to rule upon the evidence as it now stands, and I do rule that there is a failure to show the agreements relied upon in Paragraphs 6, 7 and 8.

"The testimony offered by the plaintiff makes it perfectly evident that the parties were contemplating the written execution of some document. Even if I fully accept everything testified to by the plaintiff's witnesses, there is a further element of choice intended to be open to Mr.

nee, then and there covenanted with the plaintiff to accept an assignment of said license contract and to assume the assignor's obligations thereunder, or at his option to execute a new license contract with the plaintiff in the form set forth in Exhibit 'G' annexed to the origial Complaint and adopted by reference."

Paragraphs 7 and 8 of the complaint make substantially similar allegations with respect to the defendants, Lincoln Food Shoppe, Inc. and Blue Hill Corporation, respectively.

Richia before he became subject to any obligation. Alternatives were expressed by him as being open to him. The others so understood.

"All parties contemplated ultimate reduction of any agreement to a written, executed, formal document, under established rules of the law of Contracts, where the parties look forward to a final integration of their oral agreement. Until there is such final integration, there is no contract; there is no basis therefore, for recovery under any one of the three counts and I enter judgment upon the case for the defendants."

In its opinion the trial court said in part:

"This is a suit coming within the diversity jurisdiction of this Court. Plaintiff alleges that as a result of oral agreements, each of the defendants has by process of novation become subject to obligations which Palmerino undertook by virtue of agreements with Nelson.

"The nub of the case turns on the question whether any one or more of the defendants orally agreed to be presently bound (without waiting for any written agreement) to undertake obligations to plaintiff.

\* \* \* \* \* \*

" \* \* \* I find as a fact that at all times in these negotiations Richia, the two corporations which he organized, and his representative took the position that Richia was uncertain whether he or his corporations would (1) accept the burdens and advantages of novation or (2) make an entirely new agreement for a franchise to be granted by plaintiff.

"Although Levine as plaintiff's representative offered defendant or his representative documents prepared upon the two alternative theories above stated, defendant never indicated which alternative he would choose. He and the corporations which he organized had no intent to be bound until they had made a choice and until they had signified their choice by executing in writing one set of documents.

"Under these circumstances I find as a fact and I rule as a matter of law that there was no such mutual assent as to constitute a contract. Plaintiff knew that the defendants, while indicating that they would execute one or another set of documents, never intended that their manifestation of agreeableness should constitute an expression of fixed purpose. The defendants intended and showed that they intended to reserve liberty of choice until they had given a further expression of assent.

"Upon plaintiff's own showing there is lacking an element indispensable to any recovery upon an asserted oral agreement for a novation.
\* \* \* "

If, contrary to our own belief, the plaintiff were in fact seeking to assert that a novation had taken place by virtue of an oral agreement, then the decision of the trial court would be clearly correct. It is perfectly clear that the defendant did not intend to be presently bound by the terms of the Vi-Dan licenses since he had expressly reserved the right to elect the proposed direct licenses which differed in some material respects. Accordingly, under the rule of law invoked by the court below, since material elements of the proposed license agreement remained unresolved, no binding oral contract embodying the rights and duties of licensor and licensee was ever made. Plaintiff and defendant are clearly not now in the relationship of licensor and licensee, but in our view of the case this fact becomes irrelevant. The plaintiff does not claim that there was any oral contract establishing a licensor-licensee relationship. In fact the entire thrust of his argument is to the direct contrary. He admits no binding contract of license was ever made, either oral or written, *and this is the very substance of his complaint*. He seeks spe-

cific performance, not of an oral license agreement but rather of a distinct and separate oral contract to execute a written license agreement in one or the other of these alternative forms. Plaintiff contends that for a valid consideration—namely his approval of the sale of the physical assets by Vi-Dan—Richia agreed and became bound to execute one license agreement or the other, that he no longer remained free to reject both. This is the oral contract of which the plaintiff seeks to obtain specific performance—not, as was thought by the court below, of an oral contract embodying the rights and duties of licensor and licensee.

The rule of law invoked by the court below has in our view no application to the particular oral contract which plaintiff has alleged. The court says on page 46 of the record:

"The testimony offered by the plaintiff makes its perfectly evident that the parties were contemplating the written execution of some document. Even if I fully accept everything testified to by the plaintiff's witnesses, there is a further element of choice intended to be open to Mr. Richia before he became subject to any obligation. Alternatives were expressed by him as being open to him. The others so understood."

This rule of law would be appropriate to, and dispositive of, any claim which plaintiff might make that a binding oral license agreement had been entered into. But plaintiff makes no such claim. Moreover, this rule of law would seem to be clearly inapplicable to the oral contract which plaintiff does allege since no written execution of *that particular contract* was contemplated, and since no material elements of *that particular contract* remained open for future negotiation. Richia's obligations under the oral contract alleged were completely, clearly and conclusively established from the very outset: If plaintiff approved the sale of the physical assets, Richia would execute one license agreement or the other. It is true that when the time came for the execution of the one license agreement or the other, a written agreement would be entered into, and presently unresolved questions would become resolved, but that writing would not memorialize the oral contract which the plaintiff alleged below, nor would the subsequent election, when made, constitute an addition to its terms. On the contrary, no written version of this contract was ever contemplated, and the election, when made, would be in pursuance of the express terms of that oral contract and not in addition thereto. It would be done under that contract as it already existed and not in a manner constituting a completion of a formerly inchoate agreement.

It is clear that Richia promised to execute one or the other of these license agreements. To be legally bound, there must, of course, be adequate consideration for his promise. If the only consideration offered for Richia's promise were that which already had been offered him in the proposed license agreement then the trial judge would be correct, for there would be no consideration uniquely attributable to Richia's promise to execute one agreement or the other in any event. The situation would then be one in which, in order to find a binding oral contract, one would be forced to take the position that Richia was so attracted by the consideration offered him under the license agreements that he wanted an immediately binding agreement, and that he intended then and there to be bound under an oral license agreement which would contain certain built-in, but strictly limited, alternatives. Any such view would be clearly incorrect since virtually the only consideration which the license proposals afford Richia is the opportunity to use plaintiff's trade name, and defendant has shown by subsequent actions that he is not interested in that. But he was interested in gaining the physical assets of the business and Palmerino refused to sell without plaintiff's approval. This approval represented a consideration entirely separate from any offered the defendant under the proposed license agreements. In order to secure

this consideration Richia promised to execute one agreement or the other. He thus entered into a binding oral contract not to reject both alternatives, and this contract is capable of supporting a decree of specific performance.

Our opinion is based, as it must be, entirely upon plaintiff's evidence. It may be that the defendant will be able to refute this evidence or introduce appropriate defenses of a different nature at the trial.

The judgment of the district court is reversed and the case is remanded to that court for further proceedings consistent with this opinion.

MAGRUDER, Chief Judge, dissents.